Minute Order Form (06/97)



# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 1940 | DATE | 9/29/2004 |
| CASE TITLE | GEORGE JACKSON vs. WORLDWIDE FLIGHT SERVICES, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendant's Motion for Summary Judgment [doc. no. 15-1] is granted, and Plaintiff's Motion for Leave to File Surreply [doc. no. 29-1] is denied. This case is hereby terminated. Any pending motions or schedules are stricken as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | SEP 29 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | 33 |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | | |
| CG | courtroom deputy's initials | 2004 SEP 29 AM 8:23 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE JACKSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WORLDWIDE FLIGHT SERVICES, INC., )<br>)<br>Defendant. )<br>) | Judge Ronald A. Guzmán<br><br>03 C 1940 |

## MEMORANDUM OPINION AND ORDER

Plaintiff George Jackson has sued defendant Worldwide Flight Services, Inc. ("Worldwide") alleging a violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA").[1] Before the Court is Worldwide's motion for summary judgment pursuant to Federal Rule Civil Procedure ("Rule") 56.[2] For the reasons set forth below, Worldwide's motion for summary judgment is granted.

## FACTS

Unless otherwise noted, the following facts are undisputed or are deemed admitted pursuant to Local Rule 56.1, which this Court strictly enforces. Jackson was born on August 23, 1949. (Def.'s LR 56.1(a)(3) ¶ 3.) He was hired by Miami Aircraft Services ("MAS") on February 19, 1996 and subsequently worked for Worldwide after MAS merged into Worldwide

---

[1] Plaintiff's complaint also alleged sex discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* However, Plaintiff does not contest dismissal of the sex discrimination claim. (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. ("Pl.'s Opp'n") at 1 n.1.)

[2] Also pending is Plaintiff's motion for leave to file a surreply, which claims that Defendant's reply brief contained new factual allegations and case law citations. The Court finds that Defendant's reply brief contained only reasonable responses to arguments raised in Plaintiff's opposition brief and therefore denies Plaintiff's motion.

on January 1, 2001. (*Id.* ¶ 7.) Worldwide is in the business of receiving and preparing bulk cargo from airlines and for transportation on airplanes. (Pl.'s LR 56.1(b)(3)(B) ¶ 1.) Jackson held the position of Regional Vice President and had management responsibility for twelve different locations including Worldwide's Chicago, Illinois facility. (Def.'s LR 56.1(a)(3) ¶¶ 8-9; Pl.'s LR 56.1(b)(3)(B) ¶ 3.) During the year before his termination, Jackson reported directly to Jeff Kinsella, Executive Vice President of Operations in North America. (Pl.'s LR 56.1(b)(3)(B) ¶ 2.)

Worldwide employed thirteen Vice Presidents in the United States in April 2002, nine of whom (69%) were age 40 or older. (Def.'s LR 56.1(a)(3) ¶¶ 32-33.) In addition, 45% of all management personnel at Worldwide were age 40 or older as of April 2002. (*Id.* ¶ 35.) Currently, Worldwide employs fourteen Vice Presidents in the United States, ten of whom (71%) are age 40 or older, and 51% of all management personnel are age 40 or older. (*Id.* ¶¶ 37-38, 40.)

In March 2002, Worldwide's President and CEO Jean-Francois Gouedard visited Worldwide's Chicago O'Hare station. (*Id.* ¶ 10.) Gouedard met with employees, customers, and non-customer airline representatives, and according to Gouedard, some of them complained of Worldwide's services, safety, security, unsafe practices, and lack of "management reactiveness."[3] (*Id.* ¶¶ 11-13, 15.) In addition, Gouedard learned about the unauthorized storage

---

[3] Plaintiff objects to paragraphs 12 through 19 of Defendant's L.R. 56.1 Statement of Facts on the basis of inadmissible hearsay, claiming that statements made by other persons to Gouedard cannot be used to prove the truth of the matters (*i.e.*, "lack of management reactiveness") asserted therein. However, the third-party statements were used by Gouedard in forming his impressions during a decision-making process and thus are not hearsay. *See Stewart v. Henderson*, 207 F.3d 374, 377 (7th Cir. 2000). Accordingly, paragraphs 12 through 19 are admissible.

of overload luggage from Royal Jordanian airlines in the El Al Airline's security warehouse space. (*Id.* ¶ 14.) Gouedard states that the information obtained during this visit helped him to understand why Worldwide had lost business in the previous few months. (*Id.* ¶ 17.) In Gouedard's judgment, the Chicago station was badly managed, and he believed a change was needed. (*Id.* ¶ 19.) Later, in April 2002, Gouedard confirmed that Jackson had executed a lease for the Chicago location that exceeded his authorized limits. (*Id.* ¶ 21.)

Jackson's employment was involuntarily terminated by Gouedard on April 12, 2002, when Jackson was 52 years old. (Pl.'s LR 56.1(b)(3)(B) ¶ 4.) A letter dated April 11, 2002 from Gouedard to Jackson stated that:

> In view of recent events, the Company, including its senior management, has lost confidence in your ability to be an effective member of management. Specifically, as a result of recent investigations, the company uncovered the following issues. You executed a $2,500,000 lease agreement with Air France that exceeded your authorized limits[.] You made agreements with Royal Jordanian that allowed them to warehouse parcels and luggage at our facility free of charge, which is contrary to all sound business practices[.] Your actions as cited above are unacceptable and in violation of Worldwide Flight Services Rules and Regulations.[4]

(Pl.'s Ex. C, 4/11/02 Letter from J.-F. Gouedard to G. Jackson.)

---

[4] Plaintiff explains that he executed the lease with the express authorization of his direct supervisor, Kinsella, and it was Kinsella's decision to enter the lease. (Pl.'s LR 56.1(b)(3)(B) ¶¶ 8, 11.) Furthermore, Kinsella had sufficient authority to execute the lease. (*Id.* ¶¶ 7-8.) Plaintiff also states that it is a common practice in the industry to store overload luggage as a courtesy to airline customers in certain circumstances and that the amount of Royal Jordanian bags stored was economically insignificant. (*Id.* ¶¶ 12, 14, 19.) Worldwide does not dispute Plaintiff's explanations but objects on the basis of relevance. The Court finds that these facts, though relevant, carry little weight as they do not directly impact, even if taken as true, upon Gouedard's state of mind at the time he terminated plaintiff.

3

Plaintiff alleges that his termination was based on his age. (Pl.'s LR 56.1(b)(3)(A) ¶ 21.) Plaintiff also claims that on February 2, 2002, Gouedard told Kinsella, Jackson's immediate superior, that Gouedard "had serious concerns whether older employees can keep pace with the industry," and that, "in the future," Kinsella "should pursue young, hungry people; airline people in their mid-thirties."[5] (Pl.'s LR 56.1(b)(3)(B) ¶ 24.)

After Plaintiff's termination, Gouedard rehired Gary Burtzlaff, a former Worldwide employee who was 55 years old at the time, to take over Jackson's former responsibilities as well as other duties. (Def.'s LR 56.1(a)(3) ¶¶ 24-25; Pl.'s LR 56.1(b)(3)(A) ¶¶ 24, 26.) Two months after Burtzlaff's rehire, he was promoted to Senior Vice President in light of his exemplary performance of Jackson's former duties. (Def.'s LR 56.1(a)(3) ¶ 27.) After his promotion, Burtzlaff was responsible for hiring someone to take over the portion of his duties that Plaintiff previously performed. (Id. ¶ 29.) Burtzlaff chose Tricia Kearney, born on August 30, 1969, as his replacement, and Worldwide appointed her to the position of Regional Vice President. (Id. ¶¶ 30-31.)

In September 2002, Jackson filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that his termination was based on his age. (Id. ¶ 42.) On January 31, 2003, the EEOC dismissed Jackson's charge with a finding of no cause, and he was issued a right to sue letter. (Id. ¶¶ 44-45.) On March 31, 2003, Jackson filed the present complaint against Worldwide in the instant case alleging age and sex discrimination in his termination. (Id. ¶ 46.)

---

[5] Gouedard denies he made this statement to Kinsella, (Def.'s Ex. K, Gouedard Aff. ¶ 2), but on summary judgment, the Court must view all facts in the light most favorable to the plaintiff. See Baron v. City of Highland Park, 195 F.3d 333, 337 (7th Cir. 1999).

4

## DISCUSSION

Pursuant to Rule 56(c), the Court may grant summary judgment if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file "show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must view "the facts, and all reasonable inferences drawn therefrom, in a light most favorable to the nonmoving party." *Baron v. City of Highland Park*, 195 F.3d 333, 337 (7th Cir. 1999). "If no reasonable jury could find for the party opposing the motion, it must be granted." *Hedberg v. Ind. Bell Tel. Co., Inc.* 47 F.3d 928, 931 (7th Cir. 1995). On summary judgment, the Court must not weigh the evidence submitted by the parties or determine the truth of asserted matters. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The ADEA makes it unlawful "to fail to or refuse to hire or to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). An ADEA plaintiff must show that age was a determining factor in the employer's decision to terminate the plaintiff's employment. *Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 393 (7th Cir. 1998) ("Although age need not be the sole reason for the discharge, the claimant must show that, but for his employer's motive to discriminate against him on the basis of his age, he would not have been discharged."). The burden is on the plaintiff to prove intentional discrimination by a preponderance of the evidence. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).

A plaintiff may establish age discrimination under either the direct method, by presenting "direct or circumstantial evidence that age was the determining factor" in the termination or the "indirect, burden-shifting method of proof for Title VII cases originally set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Oxman v. WLS-TV*, 846 F.2d 448, 452 (7th Cir. 1988). Jackson claims that he has established age discrimination under both the direct and indirect methods of proof.

I. **Direct Method**

"To prove age discrimination using direct evidence, an ADEA plaintiff must establish 'that he would not have been discharged "but for" his employer's motive to discriminate against him because of his age.'" *Mills v. First Fed. Sav. & Loan Ass'n*, 83 F.3d 833, 840 (7th Cir. 1996) (quoting *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991)). Age discrimination under the direct method of proof may be established through "evidence that proves discrimination without the need for inference or presumption." *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994); *see also Gusewelle v. City of Wood River*, 374 F.3d 569, 574 (7th Cir. 2004) (quoting *Rogers v. City of Chi.*, 320 F.3d 748, 753 (7th Cir. 2003)) ("'Direct evidence essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus.'").

Discriminatory motive may be shown through circumstantial evidence, including evidence of "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group;" evidence that employees who were similarly situated to the plaintiff but not members of the protected class received

systematically better treatment; or evidence that the plaintiff was qualified for the job but was replaced by someone outside the protected class, and that the employer's reason for the treatment is mere pretext for discrimination. *See Troupe*, 20 F.3d at 736. Such evidence must be "both made by a decisionmaker and related to the employment decision at issue," *Stopka v. Alliance of Am. Insurers*, 141 F.3d 681, 688 (7th Cir. 1998), and it must be contemporaneous with the termination or causally related to the decision making process, *see Geier v. Medtronic Inc.*, 99 F.3d 238, 242 (7th Cir. 1996). *See also Gusewelle*, 374 F.3d at 574 (quoting *Rogers*, 320 F.3d at 753) ("Circumstantial evidence must be sufficient to create a 'convincing mosaic' that 'allows a jury to infer intentional discrimination by the decision-maker.'").

Jackson offers as direct evidence of discriminatory intent Gouedard's alleged statements to Kinsella that Gouedard had "serious concerns whether older employees can keep pace with the industry," and that, "in the future," Kinsella was to "pursue young, hungry people; airline people in their mid-thirties." (Pl.'s LR 56.1(b)(3)(B) ¶ 24.) Jackson also argues that Gouedard neither informed Jackson or Kinsella that there were performance problems nor consulted with Kinsella prior to the termination decision. The Court finds that Gouedard's statements, when viewed in combination with the other circumstantial evidence in the record, are not sufficient to allow Plaintiff's direct claim to withstand summary judgment.

First, the statements were made more than two months before Jackson's termination and therefore were "not made contemporaneously to the adverse employment action as required by our case law." *See Markel v. Bd. of Regents of Univ. of Wis. Sys.*, 276 F.3d 906, 910 (7th Cir. 2002) (holding that statements made less than two months before the adverse action were not contemporaneous); *see also Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 575 (7th Cir. 2003)

(affirming grant of summary judgment and stating that "[t]he less direct the connection between the comment and the employment action – that is, if the comment was not made in temporal proximity to the employment action, or if the comment was not made in reference to that action – the less evidentiary value the comment will have."). Second, Jackson has presented no evidence that the alleged statements were linked to Gouedard's decision to terminate Jackson's employment or that they referred to Jackson at all. "[B]efore seemingly stray workplace remarks will qualify as direct evidence of discrimination, the plaintiff must show that the remarks 'were related to the employment decision in question.'" *Fuka v. Thomson Consumer Elecs.*, 82 F.3d 1397, 1404 (7th Cir. 1996) ("If such proof is lacking, the remarks alone will not give rise to an inference of discrimination even when uttered by the ultimate decisionmaker.") (citation omitted); *see also Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1005 n.6 (7th Cir. 2000) (explaining that an allegedly discriminatory comment was not causally related to the decision making process when the statement referred to future compensation decisions).

Third, the comments themselves do not raise an inference that Gouedard harbored a motive to discriminate against employees based on age: "While making any distinction between a person's mindset and his or her age may present a close question, such a potential distinction certainly reduces the likelihood that discrimination, rather than competitive desire, was the motivating influence for [the plaintiff's] termination." *Schuster*, 327 F.3d at 575 (affirming summary judgment and noting that comments that younger employees are more energetic and willing to work harder "may have less to do with age and more to do with business climate").

Fourth, even if Gouedard did not communicate his concerns about Jackson to Kinsella,[6] an employer's arbitrary and subjective decisionmaking process is not by itself enough to prove age discrimination. *See Richter v. Hook-SupeRx, Inc.*, 142 F.3d 1024, 1031-32 (7th Cir. 1998). Finally, as will be discussed in more detail below, the fact that Jackson was replaced by someone three years older is circumstantial evidence supporting the contrary inference, that Gouedard was not biased against older workers.

The cases cited by Jackson are distinguishable because those plaintiffs offered circumstantial evidence of discriminatory animus not present in this case and/or showed a link between the comments and the adverse employment action. *See Shager v. Upjohn Co.*, 913 F.2d 398, 401-02 (7th Cir. 1990) (finding summary judgment inappropriate where the plaintiff was replaced by a younger worker for reasons that were demonstrably untrue); *McNeil v. Economics Lab., Inc.*, 800 F.2d 111, 115 & n.3 (7th Cir. 1986), *overruled on other grounds by Coston v. Plitt Theatres, Inc.*, 860 F.2d 834, 835-36 (7th Cir. 1988) (affirming judgment for plaintiff after bench trial where plaintiff presented substantial direct evidence of discrimination, including employer's express intention to eliminate older salesmen and replace them with "bright young people"); *Notaro v. Digital Equipment Corp.*, No. 93 C 7198, 1994 WL 457231, at *4, 6 (N.D. Ill. Aug. 19, 1994) (holding that a decisionmaker's direct statement to plaintiff that he "represent[s] the old DEC" was sufficiently ambiguous to defeat summary judgment). The Court concludes that Plaintiff has not shown age discrimination using the direct method of proof.

---

[6] The parties dispute whether or not Gouedard did in fact inform Kinsella about his perceived problems with Jackson's performance, but this evidentiary dispute must be resolved in Plaintiff's favor for the purposes of summary judgment.

## II. Indirect Method

Jackson next attempts to prove age discrimination under the *McDonnell Douglas* indirect method of proof. Under this method, a plaintiff must initially establish a *prima facie* case of age discrimination by a preponderance of the evidence. *Wilson v. AM Gen. Corp.*, 167 F.3d 1114, 1119 (7th Cir. 1999). Jackson may establish a *prima facie* case of age discrimination by showing that: (1) he is a member of a protected class of persons over forty years of age; (2) he performed his job satisfactorily to Worldwide's legitimate expectations; (3) he suffered an adverse employment action; and (4) that he was replaced by a substantially younger individual. *See Fuka*, 82 F.3d at 1404; *see also Schuster*, 327 F.3d at 575 (quoting *Huff v. UARCO, Inc.*, 122 F.3d 374, 385 (7th Cir. 1997)) ("'When a plaintiff uses the indirect method of proof, no one piece of evidence need support a finding of age discrimination, but rather the court must take the facts as a whole.'").

If Jackson successfully demonstrates a *prima facie* claim of age discrimination, the burden "shifts to the employer to articulate a nondiscriminatory reason for discharging the plaintiff then shifts back to the plaintiff to show that the employer's proffered explanation is pretextual." *Adreani*, 154 F.3d at 394. However, at all times, "the ultimate burden remains with the plaintiff-employee to persuade the trier of fact that the defendant-employer intentionally discriminated against him based upon his age." *Id.* at 393-94. Worldwide concedes that Jackson has established the first and third elements of a *prima facie* case, as Jackson is over forty years of age and he was terminated, but the parties dispute whether Jackson was performing his job satisfactorily or was treated differently than a similarly situated younger employee.

10

Under the fourth prong of the *McDonnell Douglas* analysis in ADEA claims, "a plaintiff must show that he was replaced by someone 'substantially younger,' although not necessarily outside the protected class." *Richter*, 142 F.3d at 1028 (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996)). "'In the age-discrimination context, [an inference that an employment decision was based on a discriminatory criterion] can not be drawn from the replacement of one worker with another worker insignificantly younger.'" *Id.* (alteration in original).

The undisputed evidence establishes that Jackson was replaced by Gary Burtzlaff, who was three years older than Jackson. Jackson maintains that Burtzlaff's hiring was "suspicious" because (1) when Burtzlaff was rehired, he performed other duties in addition to those previously performed by Plaintiff; (2) Burtzlaff was promoted for exemplary performance after only two months; and (3) Burtzlaff was promoted over four other Regional Vice Presidents who had been at Worldwide before Burtzlaff was rehired. (Pl.'s Opp'n at 13.) Plaintiff contends that he should be allowed to argue that Burtzlaff was not in fact hired to replace him but instead was hired to fill in until an actual replacement, *i.e.*, thirty year-old Tricia Kearney, was found. (*Id.*)

Plaintiff, however, offers no evidence, other than his own speculation, that the company hired Burtzlaff with the intention of hiring a younger worker to replace Jackson. *See Denisi v. Dominick's Finer Foods, Inc.*, 99 F.3d 860, 866 (7th Cir. 1996) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)) ("In the face of a documented motion for summary judgment, a party cannot rely on a 'metaphysical doubt.'"). There is no evidence in the record by which a jury could infer that, at the time Burtzlaff was rehired, the company did not expect him to remain in the Regional Vice President position indefinitely. Indeed, given the

11

undisputed evidence that Burtzlaff capably handled Plaintiff's former duties as well as additional responsibilities, it is difficult to comprehend how a reasonable jury could infer that Burtzlaff's promotion was "suspicious." Similarly, the fact that Burtzlaff was ultimately promoted out of Plaintiff's former position over employees who had allegedly been at Worldwide longer does not raise an inference that the promotion was based on anything other than Burtzlaff's excellent performance.

Finally, even if Burtzlaff was hired to fill in temporarily until a replacement was found, the undisputed evidence in the record demonstrates that Kearney was chosen solely by Burtzlaff, not Gouedard, who was the decisionmaker responsible for Jackson's termination. Thus, even if Plaintiff could show that *Burtzlaff* harbored a discriminatory motive in hiring Kearney, that would not allow an inference that *Gouedard* discriminated based on age when he terminated Jackson. Moreover, other than Kearney, Jackson has not given examples of any younger employees not in the protected class who were treated more favorably than he was.

Because Jackson has failed to point to evidence that he was treated differently than similarly situated employees, he has not established a *prima facie* case of discrimination, and the Court need not address the parties' arguments regarding whether he was performing satisfactorily or whether the reasons for his discharge were pretextual. *See Rogers*, 320 F.3d at 755-56; *see also Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 330 (7th Cir. 2002) ("If a district court determines that a plaintiff has failed to identify a similarly situated co-worker outside of [his] protected class, or that the co-worker identified by the plaintiff, while similarly situated, was not treated in a more favorable manner, it need not address any of the underlying allegations of disparate treatment.").

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [doc. no. 15-1] is granted, and Plaintiff's Motion for Leave to File Surreply [doc. no. 29-1] is denied. This case is hereby terminated.

**SO ORDERED.**          ENTERED: 9/29/04

*Ronald A. Guzman*
**HON. RONALD A. GUZMAN**
**United States Judge**